# In The Matter Of:

*Aaron Petitt, et al. v.*
*City of Cleveland*

---

*Jeff Follmer*
*January 17, 2019*

---

*Fincun-Mancini, Inc.*
*1801 E. Ninth Street*
*Suite 1720*
*Cleveland, Ohio 44114*
*(216) 696-2272*

Min-U-Script® with Word Index

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

Page 1

```
 1          IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT
 2                 EASTERN DIVISION
 3                     - - -
 4   Aaron Petitt, et al,      )
 5            Plaintiffs,      )
 6       vs.                   )  Case No: 1:18-CV-01678
 7   City of Cleveland,        )
 8            Defendant.       )
 9                     - - -
10
11        Deposition of Jeff Follmer, a plaintiff
12   herein, called by the defendant for
13   cross-examination pursuant to the Federal Rules of
14   Civil Procedure, taken before Constance Versagi,
15   Notary Public in and for the State of Ohio, at Burke
16   Lakefront Airport, 1501 Marginal Road, Cleveland,
17   Ohio, on Thursday, January 17, 2019, commencing at
18   1:15 p.m.
19                     - - -
20
21
22
23
24
25
```

Page 2

```
 1   APPEARANCES:
 2   On behalf of the Plaintiffs:
 3        Jared Klebanow, Esq.
          Klebanow Law LLC
 4        701 City Club Building
          850 Euclid Avenue
 5        Cleveland, Ohio  44114
          216-621-8320
 6        Jklebanow@klebanowlaw.com
 7
 8   On behalf of the Defendant:
 9        William M. Menzalora, Esq.
          Michael Pike, Esq.
10        City of Cleveland
          Law Department
11        601 Lakeside Avenue, Room 106
          Cleveland, Ohio  44114
12        216-664-4285
13
14
15                     - - -
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1                     INDEX
 2   WITNESS:                              CROSS
 3   Jeff Follmer
 4        By Mr. Menzalora                   4
 5
 6                     - - -
 7          E X H I B I T S
 8   Defendant's:                         Marked
 9     H - CBA                              15
10     I - grievance trail                 17
11     J - CPPA Constitution/Bylaws        45
12                     - - -
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 4

```
 1            JEFF FOLLMER
 2   of lawful age, being first duly sworn, as
 3   hereinafter certified, was examined and testified
 4   as follows:
 5            CROSS-EXAMINATION
 6   By Mr. Menzalora:
 7   Q    Good afternoon, Jeff.
 8   A    Hello.
 9   Q    You've had your deposition taken before,
10        correct?
11   A    Couple times, yes.
12   Q    You've testified in hundreds of arbitrations
13        probably?
14   A    Correct.
15   Q    We're here, we have a court reporter
16        obviously, so do your best not to give me
17        uh-huh or um-hum.  Say yes or no to questions,
18        as opposed to um-hum, or uh-uh, or shaking
19        your head and everything.  I'll remind you
20        because people frequently do that, even
21        notwithstanding instructions.  I don't think
22        we will be too long today.
23            Can you give us for the record your
24        full name and spell your last name?
25   A    Jeff Follmer, F-O-L-L-M-E-R, Badge 654.
```

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

Page 5

1 Q  You are currently a detective with the City of
2     Cleveland, Division of Police, correct?
3 A  Correct.
4 Q  But your Civil Service rank is that of Patrol
5     Officer; is that correct?
6 A  Correct.
7 Q  How long have you been with the City?
8 A  27 years in March.
9 Q  What academy class does that put you in?
10 A  106, 1992.
11 Q  I know it was a long time ago.
12 A  March of '92.
13 Q  You are currently also the President of the
14    Cleveland Police Patrolmen's Association,
15    correct?
16 A  Correct.
17 Q  Your current term as President is from
18    January 1, 2018 through December 31, 2020; is
19    that correct?
20 A  Correct.
21 Q  This is your second tenure as CPPA President?
22 A  It is.
23 Q  I'm not going to go back that far.  After Bob
24    Beck retired from the City of Cleveland and
25    stepped down as President of the Cleveland

Page 6

1     Police Patrolmen's Association, from then to
2     the present am I accurate in saying the
3     presidents were Steven Loomis, then you, then
4     Steven Loomis, and now you again, correct?
5 A  Correct.
6 Q  Steve Loomis' first tour of duty as President
7     of the CPPA would have been January 1, '09
8     through December 31, 2011, correct?
9 A  Correct.
10 Q  You were his First Vice President, or you were
11    the First Vice President of the CPPA?
12 A  Correct, on his second term.
13 Q  His second term, or his first term?
14 A  No, his second term.
15 Q  So, under the Collective Bargaining Agreement
16    between the City and the CPPA, three patrol
17    officers are designated on full-time release
18    to the CPPA hall, correct?
19 A  Correct.
20 Q  Is it three or is it up to three?
21 A  Three.
22 Q  So, during Steve Loomis' first tenure as CPPA
23    President from '09 through '11, it would have
24    been Steve and two other patrol officers on
25    full-time release designated to the CPPA hall,

Page 7

1     correct?
2 A  That's correct.
3 Q  You ran against him.  You were CPPA President
4     from that puts it January 1, 2012 through
5     December 31, 2014; is that correct?
6 A  Correct.
7 Q  Who was your First Vice President your first
8     time as CPPA President?
9 A  Steve Kinas, K-I-N-A-S.
10 Q  Then you had one other officer on full-time
11    release designated to the CPPA, correct?
12 A  Correct.
13 Q  You and Steve ran against each other, then
14    Steve prevailed, so Steve's second tenure as
15    CPPA President was from January 1, 2015
16    through December 31, 2017, correct?
17 A  That's correct.
18 Q  His First Vice President who was designated to
19    the CPPA hall was William Gonzalez?
20 A  Correct.
21 Q  Then there was another officer on full time
22    designation from the Division of Police to the
23    CPPA hall, correct?
24 A  Correct.
25 Q  You and Steve ran against each other, that

Page 8

1     resulted in your current term as CPPA
2     President?
3 A  Correct.
4 Q  Then, David Medina, M-E-D-I-N-A, is your
5     current First Vice President?
6 A  Yes.
7 Q  Who is the other current officer designated to
8     the CPPA on full time matters, for CPPA
9     matters?
10 A  Eric Flint, F-L-I-N-T.
11 Q  Is he Second Vice President, or is he
12    Treasurer, I always forget?
13 A  Treasurer.
14 Q  You don't have to have certain officers within
15    CPPA designated.  CPPA gets to choose whomever
16    they want to designate?
17 A  That's correct.
18 Q  Fair to characterize the Division of Police as
19    a paramilitary organization, correct?
20        MR. KLEBANOW: Objection.  Go ahead.
21 A  Correct.
22 Q  It's not a military organization?
23 A  No, correct.
24 Q  So, at the top of the food chain in the
25    Division of Police currently is Chief of

Page 9

1    Police Calvin Williams, correct?
2 A   Yes.
3 Q   The rank down from Chief of Police is that of
4    Deputy Chief of Police, correct?
5 A   Yes.
6 Q   Currently there are four Deputy Chiefs of
7    Police?
8 A   Yes.
9 Q   Going down the rest of the hierarchy from
10    Chief to the bottom it goes Chief, Deputy
11    Chief, Commander, Captain, Lieutenant,
12    Sergeant and then Patrol Officer; is that
13    correct?
14 A   Yes.
15 Q   We also have -- I would equate him as
16    equivalent to the Commander level, we also
17    have somebody called Traffic Commissioner,
18    correct?
19 A   Yes.
20 Q   Most of the promoted, not all, most of the
21    promoted police officers in the Division of
22    Police are represented by the Fraternal Order
23    of Police Lodge 8, correct?
24 A   Correct.
25 Q   Your union, the CPPA, represents the rank of

Page 10

1    patrol officer, correct?
2 A   Correct.
3 Q   Now, looking at what has been marked
4    previously for identification as Defendant's
5    Exhibit A, can you take a quick minute to look
6    at it since I understand you were not here for
7    Officer Petitt's deposition; is that correct?
8 A   That is correct.
9 Q   Is that a copy of the Complaint for which we
10    are here for your deposition today?
11 A   It is.
12 Q   You can take a look through the Complaint.  If
13    you go to page -- try to speed things along.
14    There are three counts in this Complaint, am I
15    correct?  Or at least three things that have
16    been characterized as Count 1, Count 2, and
17    Count 3?  Take your time.
18 A   Yes, I just got to Count 3, yes.
19 Q   CPPA pertains only to Count 3.  Counts 1 and 2
20    are on behalf of the other plaintiff, Patrol
21    Officer Aaron Petitt; is that correct?
22 A   Correct.
23 Q   So is the CPPA in this case -- Counts 1 and 2,
24    like I said, you weren't here for Officer
25    Petitt's deposition, and neither was I, and

Page 11

1    Counts 1 and 2 up make three claims.
2    One, a procedural due process claim.
3    One a substantive due process claim.  Those
4    are Count 1.
5    Count 2 is the First Amendment freedom
6    of speech violation claim.  Do you see those
7    in the Complaint?
8 A   I do.
9 Q   So what is, in a general sense, explain to me,
10    I see for Count 3 it says procedural -- I'll
11    read it into the record.  It says, procedural
12    and substantive due process and claims under
13    the 14th Amendment to the Constitution of the
14    United States and First Amendment claims under
15    the Constitution of the United States on
16    behalf of plaintiff, CPPA; did I read that
17    correctly?
18 A   You did.
19 Q   That is on page 16 of the Complaint, which has
20    been marked for identification as Defendant's
21    Exhibit A, correct?
22 A   Correct.
23 Q   So, what First Amendment violations of the
24    CPPA do you allege have been violated by the
25    City of Cleveland?

Page 12

1 A   It is the Union's position that the City went
2    outside the scope of the search warrant from
3    Sean Gorman, into Petitt's personal text
4    messaging, where he used words, through a
5    private conversation, through his text
6    messaging.
7 Q   How does that violate the CPPA's First
8    Amendment rights?
9        MR. KLEBANOW: Objection.  Go ahead.
10 A   The CPPA's?
11 Q   Yes.
12 A   It's my job to make sure that Constitutional
13    laws and contractual issues are all protected.
14    We protect everybody's rights, our members'
15    rights.
16 Q   So if I understand you correctly, the CPPA is
17    not claiming that their own First Amendment
18    rights were violated.  They are a separate
19    party plaintiff on this case in an attempt to
20    assert Patrol Officer Aaron Petitt's First
21    Amendment violations?
22 A   A member of our bargaining unit's rights were
23    violated.
24 Q   That being Aaron Petitt, correct?
25 A   Yes.

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

Page 13

1 Q   So once again, so it's clear for the record,
2     you are not claiming that the CPPA's First
3     Amendment rights were violated; is that
4     correct?  You're claiming that Aaron Petitt's
5     First Amendment rights were violated?
6 A   I characterize him as a member of the CPPA, so
7     in worrying about other members, what happens
8     in the future, I would categorize it as a
9     CPPA, affecting other members and Officer
10    Petitt.
11 Q   Officer Petitt, and other members, once again
12    I'm going to circle back to are you claiming
13    that any CPPA First Amendment rights were
14    violated by Defendant City of Cleveland, or is
15    your role as plaintiff to bring First
16    Amendment claims on behalf of Aaron Petitt and
17    anybody else that may be similarly situated
18    down the road?
19 A   I would agree with that, that my
20    responsibility is to watch for the
21    Constitutional Amendment rights of Aaron
22    Petitt and other members.
23 Q   So is it fair then to say you're not claiming
24    that the CPPA's own First Amendment rights
25    were violated by Defendant City of Cleveland?

Page 14

1 A   I think we're going back and forth on this.
2     Aaron Petitt is part of the CPPA.
3 Q   Correct.
4 A   To answer your question, I'm looking at him as
5     a member, so I am looking at it as far as the
6     CPPA it was violated.
7 Q   I understand.  So let's talk about the other
8     two claims.  The procedural and substantive
9     due process.  Let's talk about the procedural
10    due process.
11        How are you claiming, if you are, that
12    the CPPA's procedural due process rights were
13    violated by Defendant City of Cleveland?
14        MR. KLEBANOW: Objection.  Go ahead.
15 A   It's our position that his texts should not
16    have made it into a discipline, administrative
17    disciplinary hearing, or go into a
18    disciplinary hearing.
19 Q   So, are you claiming that the -- once again,
20    the CPPA's procedural, 14th Amendment
21    procedural due process rights were violated,
22    or are you claiming just that Aaron Petitt's
23    procedural due process rights were violated?
24 A   As a Union, when I fight for a right for one
25    person, I'm doing it for other members through

Page 15

1     the CPPA if it should arise again.  So, kind
2     of answering it the same way, Petitt is a
3     member of our Union.  So I have to protect his
4     rights, to protect other officers' rights.
5 Q   I get that.  The City and the CPPA are parties
6     to a Collective Bargaining Agreement, correct?
7 A   That's correct.
8 Q   Those generally have a shelf life of three
9     years?
10 A   Correct.
11 Q   You generally go from April 1st of one year,
12    to March 31st of three years later, correct?
13 A   That's correct.
14 Q   The current one is dated April 1, 2016 through
15    March 31, 2019, correct?
16 A   Correct.
17        (Defendant's Exhibit H marked for
18         identification.)
19 Q   I'm going to hand you what I'm marking for
20    identification purpose as Defendant's
21    Exhibit H, and ask if you can identify it?
22 A   It's the Collective Bargaining Agreement
23    between the City of Cleveland and the
24    Cleveland Police Patrolmen's Association.
25 Q   Take a second to flip through that and let me

Page 16

1     know if that is a true and accurate copy of
2     the current Collective Bargaining Agreement
3     between the CPPA and the City of Cleveland.
4     Take your time.
5 A   Yes, it appears to be all here.
6 Q   So, we can turn to Article 1.  This is the
7     recognition clause.  This states whom the CPPA
8     represents for Collective Bargaining Agreement
9     purposes; is that correct?
10 A   Correct.
11 Q   This Collective Bargaining Agreement,
12    Defendant's Exhibit H, has a grievance
13    arbitration process, correct?
14 A   It does.
15 Q   Are you claiming that any of -- also has a
16    provision in the management rights article,
17    Article 4, which indicates that discipline
18    should be imposed for just cause; is that
19    correct?
20 A   Correct.
21 Q   Are you claiming that any -- I'm trying to get
22    an understanding of how you are claiming the
23    City violated Aaron Petitt's procedural due
24    process rights.
25        The CPPA currently has a grievance

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

Page 17

1  pending regarding the six day suspension which
2  the City imposed upon Aaron Petitt on May 3,
3  2017.
4       MR. KLEBANOW: '18.
5       MR. MENZALORA: Mike, can you grab
6  his copy real quick, so I have my dates
7  correct. Hold on.
8       (Defendant's Exhibit I marked for
9       identification.)
10 Q   I'll hand you what I'm marking for
11 identification purposes as Defendant's
12 Exhibit I. Maybe this will speed things
13 along.
14       Is this a true and accurate copy of the
15 grievance the CPPA filed on Aaron Petitt's
16 behalf regarding the discipline that he
17 received from the City of Cleveland, six day
18 suspension on or about May 10, 2018?
19 A   Correct.
20 Q   This challenges the six day suspension that he
21 got, correct?
22 A   It does.
23 Q   This challenges the entire suspension,
24 meaning -- are you familiar that Aaron Petitt
25 was found guilty of three specifications?

Page 18

1 A   I am, yes.
2 Q   The first specification is the one that is
3  essentially the subject of your First
4  Amendment claim, and Petitt's First Amendment
5  claim?
6 A   I don't have the specifications in front of
7  me, but if you are telling me that is Spec 1,
8  I will not disagree with you.
9 Q   I'll hand you what has been marked for
10 identification purposes during Officer
11 Petitt's deposition as Defendant's Exhibit B.
12 If you can take a look.
13       MR. PIKE: Mine is marked
14 though.
15       MR. KLEBANOW: Are you looking for
16 the charge letter?
17       MR. MENZALORA: Yeah, the charge
18 letter.
19       MR. KLEBANOW: I've got it.
20       MR. MENZALORA: Exhibit B and C, give
21 them to Jeff, please.
22       MR. KLEBANOW: There is C. Here is
23 B.
24 By Mr. Menzalora:
25 Q   Okay, Jeff, do you have in front of you what

Page 19

1  was previously marked for identification
2  purposes as Defendant's Exhibits B and C?
3 A   I do.
4 Q   B has the three specifications which resulted
5  in the disposition letter by Chief of Police
6  Calvin Williams, which is reflected in
7  Defendant's Exhibit C; is that correct?
8 A   Correct.
9 Q   C is the letter which actually imposed the six
10 day suspension?
11 A   Correct.
12 Q   He was found guilty of all three of the
13 specifications which are referenced in
14 Defendant's Exhibit B, correct?
15 A   Correct.
16 Q   The first specification, once again, to close
17 this loop, is the one that is the basis of the
18 CPPA and Officer Petitt's allegation that his
19 First Amendment rights were violated, correct?
20 A   Correct.
21 Q   So for purposes of this lawsuit, the CPPA is
22 not contesting the validity of the finding of
23 guilt for Specification 2 and Specification 3?
24 A   Can you say it again?
25 Q   For purposes of this lawsuit, the CPPA is not

Page 20

1  contesting the validity of the finding of
2  guilt by the City of Cleveland for
3  Specification 2 and 3. The only specification
4  at issue in this lawsuit is Specification 1?
5 A   It is.
6 Q   What was marked for identification purposes as
7  Defendant's Exhibit I, that is challenging the
8  entire disposition letter that was marked for
9  identification purposes as Defendant's
10 Exhibit C?
11 A   Correct.
12 Q   Not to go through in great detail for the
13 record but once the CPPA files a grievance,
14 the grievance procedure that is referenced in
15 Defendant's Exhibit H comes into play and the
16 grievance procedure is Article 22; is that
17 correct?
18 A   Correct.
19 Q   So there is a grievance trail. You file a
20 grievance and it goes through various steps,
21 2, 3, 4, with the last step being arbitration,
22 correct?
23 A   Correct.
24 Q   We are currently at the arbitration level for
25 purposes of the Collective Bargaining

Page 21

1   Agreement marked for identification purposes
2   as Defendant's Exhibit H, correct?
3 A   Correct.
4 Q   The arbitration is currently on stay, pending
5   the resolution of this lawsuit; is that
6   correct?
7       MR. KLEBANOW: If you know.
8 A   I don't know that.
9       MR. MENZALORA: Off the record.
10      (Discussion had off the record.)
11 BY Mr. Menzalora:
12 Q   Jeff, so back to my last question. The
13   grievance that has been marked for
14   identification purposes as Defendant's
15   Exhibit I has reach the arbitration level and
16   currently the CPPA and the City have agreed to
17   put the arbitration in abeyance, pending the
18   resolution of this lawsuit; is that correct?
19 A   Correct.
20 Q   So, is the CPPA contending that any -- Officer
21   Petitt or the CPPA's procedural due process
22   rights contained within the grievance
23   procedure have been violated? Or is it just
24   the complaint is about the discipline that was
25   issued, the basis of the discipline that was

Page 22

1   issued to Officer Petitt by the City of
2   Cleveland back on May 10, 2018?
3       MR. KLEBANOW: Objection. Go ahead
4   though.
5 A   It would be the discipline.
6 Q   For First Amendment purposes then again -- so
7   the entire basis of the CPPA's procedural due
8   process is that Officer Petitt's procedural
9   due process rights were violated by issuing
10   discipline based upon text messages that were
11   contained on his phone?
12      MR. KLEBANOW: Objection. Go ahead.
13 Q   Is that correct?
14 A   Correct.
15 Q   Is that his -- I honestly don't know sitting
16   here, is that his personal cell phone, or his
17   City issued cell phone?
18 A   Personal.
19 Q   Regarding the -- I suspect your answers will
20   be the same -- regarding the 14th Amendment
21   substantive due process claim, how are you
22   claiming that the CPPA's substantive due
23   process rights have been violated?
24      MR. KLEBANOW: Objection. Go ahead.
25 A   It would be the same answer. Through the

Page 23

1   discipline process, through going into the
2   phone on a criminal investigation where it
3   went outside the scope of Officer Petitt's
4   private phone. Private text message, I'm
5   sorry.
6 Q   So the grievance process, like I said, the
7   last step in the grievance procedure between
8   the City of Cleveland and the CPPA which is
9   referenced in the document marked for
10   identification purposes as Defendant's
11   Exhibit H, the last step is arbitration,
12   correct?
13 A   Correct.
14 Q   Go through an arbitration. I'll say it's
15   similar to a bench trial. We sit in a
16   conference room, before a court reporter, both
17   sides get to put on, similar to a disciplinary
18   hearing, both sides get to put on evidence,
19   witnesses, whatever they want to support their
20   case. Then an arbitrator makes a written
21   opinion, sometimes after the parties submit
22   their post arbitration hearing briefs, is that
23   a fair explanation of the process?
24 A   Yes, it is.
25 Q   So, in this case, I honestly don't know if

Page 24

1   we've been assigned an arbitrator yet, or if
2   we are still waiting for an arbitrator to be
3   assigned. Once an arbitrator is assigned, we
4   have an arbitration hearing, an arbitrator can
5   do a number of things with the CPPA's
6   grievance.
7       They can say the City had just cause
8   for just Specification 1, but not
9   Specifications 2 and 3. The arbitrator can
10   say the City had just cause to impose
11   discipline for Specification 2, but not
12   Specifications 1 and 3. The arbitrator can
13   hold that the City had just cause for imposing
14   discipline for Specification 3, but not 1 and
15   2, or some combination of those
16   specifications. An arbitrator could exonerate
17   Petitt for all three specifications, or the
18   arbitrator can find Petitt guilty of all three
19   specifications; is that an accurate statement?
20 A   Correct.
21 Q   If an arbitrator exonerates Petitt for all
22   three Specifications, he or she may award
23   Petitt back pay for the six day suspension he
24   has already served; is that correct?
25 A   Correct.

Page 25

1 Q   That is accurate for the record that Officer
2     Petitt has already served his six day
3     suspension, correct?
4 A   Correct.
5 Q   An arbitrator could also award whatever other
6     benefits that he or she may deem Officer
7     Petitt entitled to under the Collective
8     Bargaining Agreement, which is marked for
9     identification purposes as Defendant's
10    Exhibit H, correct?
11 A   Correct.
12 Q   So what damages is the CPPA claiming that an
13    arbitrator could not award Officer Petitt in
14    grievance arbitration decision that is at
15    issue in the current lawsuit?
16       MR. KLEBANOW: Objection. Go ahead,
17    if you know.
18 A   What damages I feel that is outside of an
19    arbitrator?
20 Q   Correct.
21 A   What the City has done -- actually -- what the
22    City has done, targeted a criminal
23    investigation. In that criminal investigation
24    went outside of the criminal investigation
25    with a search warrant unable to be challenged

Page 26

1     in court because it is stating
2     administratively to go into somebody's private
3     texts, conversations, while they are going
4     outside the scope of that original
5     investigation.
6 Q   Did the criminal investigation involve Officer
7     Petitt?
8 A   It did not.
9 Q   Who did it involve?
10 A   Sean Gorman.
11 Q   Is that Sean with S-E-A-N, or S-H-A-W-N, or
12    something else?
13 A   It's S-E-A-N and Gorman is G-O-R-M-A-N.
14 Q   But you don't dispute that an arbitrator has,
15    whatever Arbitrator is assigned to rule on
16    CPPA Grievance 24-18 marked for identification
17    purposes as Defendant's Exhibit I, has
18    complete authority to give Officer Petitt back
19    the entirety of his six day suspension and
20    whatever other benefits may be at issue under
21    the Collective Bargaining Agreement between
22    the City and the CPPA; is that correct?
23 A   I agree with the six days. I'm not sure what
24    you are saying when you say benefits.
25 Q   Let me ask you a question. For purposes of

Page 27

1     the grievance, let's look at Defendant's
2     Exhibit I. Is the CPPA asking for any
3     benefits other than the return of pay for
4     Officer Petitt's six day suspension?
5 A   It's about pay, correct.
6 Q   Just the six day suspension?
7 A   Correct.
8 Q   What communication have you had with Officer
9     Petitt, outside of the presence of -- outside
10    of the presence of legal counsel regarding
11    this lawsuit?
12       MR. KLEBANOW: Just to be clear too,
13    that is any attorneys representing you, not
14    just Avery or I. If there were other
15    attorneys present representing you, Bill,
16    correct me if I'm wrong --
17       MR. MENZALORA: No, you are correct.
18       MR. KLEBANOW: Nothing about those
19    conversations, okay?
20 Q   What conversations have you had with Officer
21    Petitt regarding his lawsuit outside of --
22       MR. KLEBANOW: No lawyers.
23 Q   -- either Jared or Avery, or any of the CPPA's
24    what I'll call usual attorneys?
25 A   Really none. It's my job. I wasn't at his

Page 28

1     disciplinary hearing.
2 Q   Was it one of the other CPPA -- was it one of
3     the other two CPPA officers who are full time
4     release from the Division of Police work that
5     was at Petitt's disciplinary hearing then?
6 A   Correct. It was Officer Medina. I believe
7     there was conversation of prepping for his
8     disciplinary hearing. I don't recall what
9     those conversations were, but it would be
10    mostly over the -- if there was any to little
11    conversation, it would be over the
12    specifications going forward towards the
13    discipline.
14 Q   Would that have been with you and Petitt or
15    that would have been with Medina and Petitt?
16 A   We have a lot of discipline, so we always
17    bring people in before they to go their
18    hearings. I might have been present. It
19    would have been Medina for sure. Joe Delguyd
20    our attorney for sure.
21 Q   I want communications outside, when no
22    attorney was present. Let me rephrase the
23    question.
24       Have you had any conversations with
25    Plaintiff Aaron Petitt regarding any aspect of

Page 29

1  this lawsuit outside the presence of either
2  Avery Friedman, Jared, or any of the CPPA's
3  usual attorneys?
4 A  No.
5 Q  Has Officer Medina had any conversations with
6  Officer Petitt regarding this lawsuit outside
7  of the presence of any of the CPPA's normal
8  legal counsel, or Jared, or Avery?
9  MR. KLEBANOW: If you know.
10 A  No.
11 Q  Putting aside the First Amendment issue --
12  well, let me ask you a series of questions.
13  Putting aside the First Amendment
14  issue, are you of the opinion that Officer
15  Petitt is guilty of Specification 1 in the
16  charge letter that is marked for
17  identification purposes as Defendant's
18  Exhibit B?
19  MR. KLEBANOW: Objection. Go ahead.
20 Q  I ask you to put aside any First Amendment
21  issues.
22 A  Right. I have no idea what haji meant. I got
23  educated a little bit through this
24  process. Truthfully I don't know if that's
25  offensive to an Arabic male or not.

Page 30

1 Q  Are you familiar with the circumstances in
2  which the term was used when he was -- had
3  interaction attempting to arrest, however you
4  want to characterize it, the Arab American
5  male on April 27, 2017?
6 A  I am.
7 Q  You believe on behalf of the CPPA that Officer
8  Petitt's use of the term was offensive?
9  MR. KLEBANOW: Objection. Go ahead.
10 A  I believe it was offensive?
11 Q  Yes.
12 A  I said I didn't know.
13 Q  Sitting here today, do you have an opinion one
14  way or the other?
15 A  I do not.
16 Q  So, sitting here today, you cannot offer an
17  opinion whether or not you think Officer
18  Petitt is guilty of Specification 1 marked for
19  identification purposes as Defendant's
20  Exhibit B?
21 A  I don't know if the word haji is disparaging.
22  That would actually come down to an
23  arbitrator. I don't know enough about this.
24  I don't know enough about the Arab culture, if
25  haji is a negative word to them.

Page 31

1 Q  Circling back, one brief thing. How would you
2  -- let's go back to the beginning. How would
3  you characterize, during every Collective
4  Bargaining Agreement or I guess they don't
5  necessarily line up because the Collective
6  Bargaining Agreement doesn't run on the same
7  three year cycle that the CPPA officers are
8  on, correct?
9 A  Correct.
10 Q  It's off by about three, four months, correct?
11 A  Correct.
12 Q  So, the three officers that are designate for
13  assignment to the CPPA hall are designated to
14  do CPPA work essentially, correct?
15 A  Correct.
16 Q  You are not out fighting crimes, writing
17  traffic tickets, or you as a detective are not
18  out investigating crimes. I don't know Medina
19  or Flint, what departments, districts, or
20  units they come from, you are not fighting
21  crime when you are CPPA officers, correct?
22 A  Correct.
23 Q  You are largely administering the labor
24  contract that is the Collective Bargaining
25  Agreement between the City of Cleveland and

Page 32

1  the CPPA, correct?
2 A  Correct.
3 Q  How would you characterize your other
4  responsibilities on behalf of the CPPA, other
5  than administering the labor contract?
6 A  We have a lot of responsibilities.
7 Q  Okay.
8 A  You want me to go through all the
9  responsibilities we take care of?
10 Q  Right. You reference -- let's look at Count
11  3. It talks about your charter. Let's look
12  at paragraph 107 on page 17 of Defendant's
13  Exhibit A.
14  So is the basis of the CPPA being a
15  party plaintiff to this case is its charter;
16  is that correct?
17 A  Correct.
18 Q  It's not the Collective Bargaining Agreement,
19  correct, or is it both?
20 A  Both.
21 Q  So you are through this lawsuit trying to
22  advance the purposes of the Collective
23  Bargaining Agreement with the City of
24  Cleveland and the CPPA, and you are also
25  trying to advance the objectives of the CPPA's

Page 33

1   charter; is that correct?
2 A   Correct.
3 Q   So what you do mean for Count 3 of Defendant's
4   Exhibit A, the Complaint, starts with
5   paragraph 100, goes through paragraph 128; is
6   that correct?
7 A   Yes.
8 Q   Looking at paragraph -- most of the paragraphs
9   speak for themselves. When you say in
10   paragraph 103 CPPA exists for the purposes of
11   providing mutual aid and protection, and for
12   the education and general wherefore of the
13   police officer members, is that a charter
14   based statement, or a Collective Bargaining
15   Agreement based statement?
16       MR. KLEBANOW: Objection. Go ahead.
17 A   I would say it could fall in both.
18 Q   Skipping to paragraph 107. What do you, we
19   talked about due process claims being made by
20   the CPPA. What do you mean by equal
21   protection?
22       MR. KLEBANOW: Objection. Go ahead.
23 Q   How are you claiming the CPPA's equal
24   protection rights have been violated, or
25   Officer Petitt's equal protection rights have

Page 34

1   been violated?
2 A   Through the conversation picked up through the
3   text messaging, is that what you are referring
4   to? That's how I'm looking at it, that the
5   City went outside of its scope.
6 Q   Are you claiming that there is anybody
7   similarly situated to Petitt who did not get
8   disciplined for sending a similar, same or
9   similar text message as Officer Petitt?
10 A   Could you explain that?
11 Q   There is a legal difference between an equal
12   protection claim and a due process claim. You
13   claim an equal protection claim, which usually
14   means that you are claiming that somebody
15   similarly situated to Petitt didn't get
16   disciplined.
17       What I'm trying to figure out is, are
18   you actually claiming that somebody similarly
19   situated to Officer Petitt did not get
20   disciplined, or is this case really about the
21   two due process violations we talked about and
22   the First Amendment violation that we talked
23   about?
24 A   To protect other police officers. I don't
25   know if there is any -- there has been no

Page 35

1   other discipline of text messaging that I know
2   of right now.
3 Q   So you are not aware of anybody that is
4   similarly situated to Officer Petitt who was
5   not disciplined by the City of Cleveland, is
6   that an accurate statement?
7 A   That is correct. That is correct. I'd have
8   to do some kind of public record request
9   through Internal Affairs to see on their
10   investigations if there is anything like that.
11 Q   Paragraph 108, what do you mean by Plaintiff
12   CPPA also has its purpose under its charter to
13   represent its members in matters of policy,
14   what do you mean by that?
15 A   That we are obligated as a bargaining unit to
16   uphold the Collective Bargaining legal laws
17   and Constitutional rights.
18 Q   Anything else?
19 A   No, not off the top of my head.
20 Q   Let's jump to paragraph 126. You say
21   Plaintiff CPPA has been deprived of the
22   ability to protect, defend, and educate
23   relative to you list a whole list, fair
24   notice, warning, or hearing.
25       To protect and defend Officer Petitt in

Page 36

1   this case, you would be able to do it through
2   the grievance process in the Collective
3   Bargaining Agreement between the City of
4   Cleveland and Officer Petitt; isn't that
5   correct?
6       MR. KLEBANOW: Objection. Go ahead.
7 A   Say the question one more time.
8 Q   Wouldn't you be able to protect and defend
9   Officer Petitt through the grievance process
10   as contained in the Collective Bargaining
11   Agreement that has been marked for
12   identification purposes as Defendant's
13   Exhibit H?
14 A   I would disagree.
15 Q   How so?
16 A   I disagree that the issue of the text messages
17   through an arbitrator would not -- through an
18   arbitrator hearing would not touch on these
19   issues. I think we would be touching more on
20   his six day suspension.
21 Q   Are you telling me an arbitrator cannot rule
22   on issues of violations of the United States
23   Constitution?
24 A   Truthfully I'm not sure. I never had one go
25   outside of that, to that scope there.

Page 37

1 Q   I'm curious about the next paragraph, the last
2   one here, it says as a result of the acts and
3   conduct of the Defendant City of Cleveland,
4   Plaintiff CPPA's members will suffer
5   discipline, loss of reputation, loss of wages,
6   hedonic damages and a whole host of other
7   damages.
8       So, then are you bringing this
9   complaint then on behalf of all CPPA members,
10   or just on behalf of Officer Petitt?
11 A   This could affect all CPPA members.
12 Q   It could.  But has the incidents that are the
13   basis of this lawsuit affected CPPA members?
14       MR. KLEBANOW: Objection.  Go ahead.
15 A   It could.  That's the best answer.  If there
16   is another investigation where --
17 Q   Could means going forward.  I'm asking you
18   sitting here today, or at the time you filed
19   the Complaint, have the actions that resulted
20   in the discipline to Officer Aaron Petitt
21   affected any other CPPA bargaining unit
22   members other than Aaron Petitt?
23 A   Yes.
24 Q   Who?
25 A   John Kraynik.  Then there is Steve Fedorko.

Page 38

1   I'm not sure of the timing of his to this one.
2   So I don't know which one came first or
3   second.
4 Q   Who is John Kraynik and if you could spell
5   that for Connie?
6 A   K-R-A-
7 Q   Y-N-I-K?
8 A   Yeah.
9 Q   Who is he?
10 A   He also received discipline through this Sean
11   Gorman investigation.
12 Q   What kind of discipline did Kraynik receive?
13 A   I believe it was a letter of re-instruction.
14   I can't remember if he had other charges
15   though.
16 Q   It was a letter of re-instruction for what?
17   What was he alleged to have done wrong?
18 A   The same disparaging remarks, same as the
19   Specification for 1.
20 Q   Was he having a conversation with Petitt, or
21   was it a separate incident?
22 A   His was a conversation with Sean Gorman.  So
23   both Petitt and Kraynik came from Sean
24   Gorman's search warrant for his phone and text
25   messages.

Page 39

1 Q   Were they -- I don't know.  Were they having
2   separate conversations with Gorman, or were
3   they a group?
4 A   Separate.
5 Q   Gorman was having a text message conversation
6   with Kraynik on one day and he was having text
7   message conversations with Plaintiff Aaron
8   Petitt on a different day; is that correct?
9 A   Correct.
10 Q   Who was the other person that you -- who was
11   the second person?
12 A   Steve Fedorko.
13 Q   Who is Steve?  Can you spell that for Connie?
14 A   F-A-R-D-A-R-K-O.
15 Q   F-E or F-A?
16 A   F-A.
17       MR. KLEBANOW: I think it might be
18   F-E-D-O-R-K-A, I think.
19 Q   Is it Steve S-T-E-V-E, or S-T-E-P-H-E-N?
20 A   S-T-E-V-E.
21       MR. KLEBANOW: V-E-N, yeah.
22 Q   So what is -- I'm not familiar with that name,
23   doesn't ring a bell, what did he do?
24 A   It will be.  His was an accusation where he
25   got hurt fighting with somebody.  Through a

Page 40

1   search warrant of his phone, and text messages
2   with other people, the City brought charges
3   against Steve for things that were found in
4   his phone.
5 Q   What was the first part, you said he got
6   injured or --
7 A   Fighting with a -- he broke a toe while
8   fighting with a suspect.
9 Q   How does that have relationship for him being
10   disciplined for text messages on his phone?
11   Can you close that gap for me.  I'm not
12   understanding that.
13 A   Somehow there was an accusation that maybe he
14   didn't hurt his toe by the suspect kicking
15   him.  That maybe he hurt his toe by somebody
16   throwing an object away from the bad guy,
17   hitting his toe.
18 Q   Also there was at least at some point that he
19   broke his toe because the suspect kicked his
20   foot?
21 A   Correct.
22 Q   Go ahead.
23 A   So there is a question about how he broke his
24   toe I guess.  I never seen the search warrant.
25   I'm only assuming somewhere in the search

Page 41

1 warrant he was observed texting, which enabled
2 the Internal Affairs to get a search warrant
3 for his phone, which led to other charges not
4 relating to the incident.
5 Q   Was it a criminal search warrant or an
6 administrative search warrant?  Was it
7 Internal Affairs, looking for criminal
8 charges, or something else?
9 A   They get -- start over.  They can't get an
10 administrative search warrant.  I know they
11 would like to think they can.  So it was -- to
12 answer your question it was a criminal --
13 Q   I don't do criminal law so --
14 A   It was a criminal search warrant originally.
15 Q   Gotcha.  He got disciplined for text messages
16 that were found on his phone too?
17 A   Correct.
18 Q   Were they text messages to another CPPA
19 officer, or were they to a civilian?
20 A   If I remember correctly, officers and
21 civilians.
22 Q   Text message of the type in this case,
23 offensive to an Arab American, or other
24 language?
25       MR. KLEBANOW: Objection.  Go ahead

Page 42

1 if you know.
2 A   No, there was no offensive language issues.
3 Equipment, there is like 15 Specifications.
4 Q   Were there any -- was he, or was he not,
5 disciplined for any offensive text messages
6 regarding Arab Americans?
7 A   No.
8 Q   Was he disciplined for any offensive messages
9 involving any other nationality or race?
10 A   No.
11 Q   Was it something else?
12 A   Correct.
13 Q   So what was -- is there any First Amendment
14 issue involving Officer Fedorko?  In this case
15 we're here for First and 14th Amendment --
16       MR. KLEBANOW: Objection.  Go ahead,
17 you can answer if you know.
18 A   No, I don't recall there was, but I could be
19 incorrect on that.
20 Q   He wasn't disciplined, getting back to my last
21 question, maybe you answered it, Officer
22 Fedorko wasn't disciplined for any -- the
23 offensive nature of any text messages; is that
24 a fair statement, he was not disciplined?
25 A   Offensive nature?

Page 43

1 Q   You mentioned text messages.  My question is,
2 was he -- you said it was like 15
3 Specifications, was he disciplined at all
4 for --
5 A   He was.  No, nothing offensive toward another
6 individual.
7 Q   Was it disparaging remarks about the City or
8 the Division of Police?
9 A   Correct.  Policies and procedures that were --
10 Q   Were his messages -- it wasn't about -- his
11 messages were disparaging about either
12 individuals in the Division of Police, or
13 policies, procedures, that type of stuff?
14 A   Correct, and use of force.  Obviously the
15 question with the toe.
16 Q   An interesting use of force case.
17 A   It was.
18 Q   I don't know if we have that case.  I don't
19 think I have much more.
20       MR. KLEBANOW: Want to take a break
21 for a minute?
22       MR. MENZALORA: Yeah.
23       (Recess taken.)
24 By Mr. Menzalora:
25 Q   Jeff, I'm going to hand you what I marked for

Page 44

1 identification purposes as Defendant's
2 Exhibit J.  Ask if you could take a look at
3 those and identify them for the record.
4       Let me ask you a question a better way.
5 Is this a true and accurate copy of the
6 Constitution and Bylaws of the CPPA that were
7 in effect from May 21, 2014 -- they were
8 approved on either May 21, 2014 or June 18,
9 2014?
10 A   Correct.
11 Q   Have there been any changes to this document
12 from whenever they were approved in 2014 until
13 the present?
14 A   I do not believe so, unless something was done
15 during Loomis' presidency during those three
16 years.
17 Q   So, is the basis for your belief that the CPPA
18 is a proper party plaintiff in this lawsuit
19 contained in Article 1 of the charter?
20 Because we talked about you thought you were
21 able to bring the lawsuit on behalf of CPPA
22 bargaining unit members both under the
23 Collective Bargaining Agreement between the
24 CPPA and the City, and the CPPA's charter, do
25 you remember your testimony on that?

Page 45

1 A   I do.
2       (Defendant's Exhibit J marked for
3        identification.)
4 Q   Is the basis for which you think the CPPA has
5      the right to be a party plaintiff to the
6      current lawsuit, is that contained in Article
7      1 of this document that has been marked for
8      identification purposes as Defendant's
9      Exhibit J?
10      MR. KLEBANOW: Objection.  Go ahead,
11     if you know.
12 A   Article 1?
13 Q   Yes.  Actually Article --
14 A   2?
15 Q   -- 2.
16      MR. KLEBANOW: I was wondering why
17     he was asking about 1.
18 Q   Article 2.  Is the basis for which you believe
19     the CPPA is a proper party plaintiff in
20     relationship to its charter, is that contained
21     in Article 2 of the document that has been
22     marked for identification purposes as
23     Defendant's Exhibit J?
24      MR. KLEBANOW: Objection.  Go ahead,
25     if you know.

Page 46

1 A   I would agree.
2 Q   Then looking at what has was previously marked
3      for identification purposes as Defendant's
4      Exhibit E, can you take a look at this.  Can
5      you identify this for the record?  A text
6      message exchange between Plaintiff Petitt and
7      Patrol Officer Sean Gorman that resulted in --
8 A   Yes.
9 Q   Resulted in Specification 1 in the charge
10     letter that was marked for identification
11     purposes as Defendant's Exhibit --
12 A   Correct.
13 Q   Let me ask the question.  Defendant's Exhibit
14     B?
15 A   Correct.
16 Q   Both Gorman and Petitt were on duty, correct,
17     at the time of this text message exchange
18     referenced on Defendant's Exhibit E?
19 A   I'm not sure about Gorman.
20 Q   Petitt was on duty?
21 A   Correct.
22 Q   So Gorman you don't know if he was on duty?
23 A   Correct.
24 Q   Officer Kraynik, when we were talking about
25     him a few minutes ago, he got a

Page 47

1      non-disciplinary letter of re-instruction,
2      correct?
3 A   Correct.
4 Q   I think you also said he received
5      non-disciplinary, he was sent to sensitivity
6      training; is that correct?
7 A   I don't recall.  It could have been though.
8 Q   That would have also been non-disciplinary if
9      the Division of Police had sent him to
10     sensitivity training or some other kind of
11     training, or retraining, that would have been
12     non-disciplinary in nature too?
13 A   Technically, yes.  I still call it discipline.
14 Q   Under the Division of Police's General Police
15     Order on discipline, letters of re-instruction
16     are non-disciplinary, correct?
17 A   Correct.
18 Q   Sending, at least under the GPO, sending the
19     people to corrective training, or remedial
20     training, however you want to call it, or
21     training like that, would be non-disciplinary
22     in nature, as least as far as the GPO is
23     concerned?
24 A   As far as the GPO, correct.
25 Q   You didn't grieve Officer Kraynik's letter of

Page 48

1      re-instruction or his training, did you, you
2      being the CPPA?
3 A   Correct, we did not.
4 Q   Did you grieve Sean Gorman's discipline that
5      we were talking about earlier, the CPPA, did
6      they grieve it?
7 A   I don't think Sean got disciplined, unless you
8      are going to tell me different.
9 Q   I don't know.
10 A   I think he retired before anything.
11 Q   Discipline, or a predisciplinary hearing could
12     be held?
13 A   If there were any charges that would have came
14     up.  I'm not sure about that.
15 Q   Looking at the document that has been marked
16     for identification purposes Defendant's
17     Exhibit E.
18      MR. KLEBANOW: The text messages.
19 Q   The text messages, Petitt's text message at
20     1:58 a.m. says -- he must be working third
21     shift, correct?  At least on the date of this
22     incident?
23 A   I think he works like a four platoon.
24 Q   Overnight for purposes of the record?
25 A   Correct.  Yes.

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

Page 49

1 Q    You and I know what platoons are.  For
2      purposes of the record, it's an overnight
3      shift?
4 A    Exactly.  After the midnight hour.
5 Q    So, Petitt's text message never, at 1:58 a.m.,
6      never a bother to tune up some haji, haha, do
7      you have an opinion whether or not that is
8      offensive or in-offensive, or proper or
9      improper?
10         MR. KLEBANOW: Objection.  Go ahead.
11 A    I don't have an opinion because I'm not
12      educated on the word haji, as far as how it
13      pertains to the Arab culture.
14 Q    How about the rest of the text message?  It
15      says tune up.  You understand what the word
16      tune up means?
17 A    I do.
18 Q    That means violence, correct?
19         MR. KLEBANOW: Objection.  You can
20      answer.
21 Q    It mean impose violence on somebody else?
22 A    That's a little far-fetched.  I don't think
23      police officers in this day and age can tune
24      up anybody, because everything is on video.  I
25      don't think that --

Page 50

1 Q    What do you understand the word tune up to
2      mean?
3 A    As I'm reading this coming from a police
4      officer, I wouldn't say it was something
5      violent.
6 Q    You don't think he intended any violence with
7      the use of the word tune up?
8         MR. KLEBANOW: Objection.
9 A    He could have, but he knows he can't.  A
10      police officer on duty with a video camera.
11      The word tune up was something he said that he
12      knew he couldn't follow, or couldn't do an act
13      of violence on somebody down there.
14 Q    Putting that aside.  Doesn't the general use,
15      general meaning of the word tune up mean to
16      beat up?
17         MR. KLEBANOW: Objection.  Go ahead.
18 A    One could look at it that way.
19 Q    So you are not offering any opinion whether or
20      not this text message as a whole, from
21      beginning to end, is offensive or
22      in-offensive?
23 A    Correct.
24 Q    You are not offering an opinion whether the
25      text message from beginning to end is

Page 51

1      improper?
2 A    Correct.
3 Q    You've never stated to any media outlet your
4      opinion on whether or not this text message is
5      either offensive or in-offensive or proper or
6      improper?
7 A    To any media outlet?
8 Q    Correct.
9 A    I'm not sure.  I don't recall what I've said
10      to the media.
11 Q    You don't recall saying to somebody that you
12      didn't condone this text message sent by
13      Officer Petitt at 1:58 a.m.?
14 A    I'm not sure if I was referring to Petitt or
15      not on that one, unless you are going to tell
16      me I said his name specifically.
17 Q    I'm just asking you sitting here today do you
18      remember?
19 A    I do not.
20         MR. MENZALORA: Off the record.
21         (Recess taken.)
22   By Mr. Menzalora:
23 Q    Back to Defendant's Exhibit E.  Do you
24      understand how somebody could be offended by
25      the text messages sent by Officer Petitt at

Page 52

1      1:58 a.m. on Defendant's Exhibit E?
2 A    Do I understand, is that what you said?
3 Q    Yes.  Do you understand how somebody would
4      find that offensive?
5 A    Somebody could find it offensive I guess.  I'm
6      not really on haji, what haji means, if that
7      is offensive.  I guess to answer your question
8      I really don't know what haji is referring to.
9      From my little bit of education, it's a leader
10      in the Arab community, if I have that right.
11 Q    When you first saw this text message, what did
12      you think of it?
13 A    I had no idea why he was going up on charges,
14      that's what I thought.
15 Q    For this text message?
16 A    Correct.  Plus, because it was between two
17      people in a private conversation, a private
18      text conversation.
19 Q    Put that aside.  Let's assume somebody who's
20      in the Arab American community, are you saying
21      you don't understand how what is contained in
22      this text message at 1:58 a.m. in Defendant's
23      Exhibit E would be offensive to them?
24         MR. KLEBANOW: Objection.  Go ahead.
25 A    Correct.  I would have to get more -- actually

Page 53

1 have to probably talk to somebody in the
2 Arabic community to find out if that is
3 offensive.
4 Q You don't think this text message in
5 Defendant's Exhibit E at 1:58 a.m. by Officer
6 Petitt is offensive?
7 A I don't have an opinion on it just because I'm
8 not educated on that word haji.
9 Q So Jeff, let's look at this thing from top to
10 bottom, Defendant's Exhibit E. At the top of
11 the exchange there is a text message from
12 Gorman to Petitt, correct?
13 A Correct.
14 Q Stop down to Hustler means the Hustler strip
15 club in the Flats in the City of Cleveland,
16 correct?
17 A Correct.
18 Q Stop down to Hustler, apparently there is some
19 middle eastern types giving people a hard
20 time. We are in route, correct?
21 A Correct.
22 Q Did I read that correctly?
23 A Correct.
24 Q That's at 1:32 a.m.?
25 A Correct.

Page 54

1 Q They means Gorman and his partner?
2 MR. KLEBANOW: Objection. Go ahead.
3 A I know it's Gorman so I would stand corrected
4 now I recall that he was working.
5 Q Once again, what I'm talking about the we,
6 does we mean Gorman and his partner or was
7 Gorman in a single response car and we mean
8 Gorman and some other patrol cars, if you
9 know?
10 A I don't know.
11 Q It says, packing up, be there soon. What is
12 your understanding of what Officer Petitt
13 meant by packing up? Was he at the scene of
14 another police incident he was responding to?
15 A I don't know.
16 Q You do know that Officer Petitt was on duty at
17 the time of the text message reflected on
18 Exhibit E, correct?
19 A Correct.
20 Q Gorman responds take your time. Responds
21 again, 20 minutes later, sorry for bothering
22 you, sir. Petitt and Gorman are both patrol
23 officers; is that correct?
24 A Correct.
25 Q Given the text message exchange from top to

Page 55

1 bottom, where Gorman says there is some middle
2 eastern types, and at the bottom, never a
3 bother to tune up some haji, haha. You are
4 stating you don't understand how somebody in
5 the Arab American community would find that
6 offensive?
7 A Say it one more time. I'm stating what?
8 Q You're stating you don't understand how the
9 text message, never a bother to tune up some
10 haji, haha, would be offensive to somebody in
11 the Arab American community?
12 A I'm not sure if it would be.
13 Q So you don't know one way or the other?
14 A Correct.
15 Q LOL response by Gorman is short for laugh out
16 loud?
17 A Correct.
18 MR. MENZALORA: I have nothing
19 further. You want to advise him of his rights?
20 MR. KLEBANOW: We will read.
21 (Deposition concluded at 2:37 p.m.)
22 (Signature not waived.)
23 - - -
24
25

Page 56

1 SIGNATURE PAGE
2
3 In Re: Aaron Petitt, et al. vs. City of Cleveland
4 Case Number: 1:18-CV-01678
5 Deponent: Jeff Follmer
6 Date: 1-17-19
7
8 To the Reporter:
9 I have read the entire transcript of my
10 Deposition taken in the captioned matter or the same
11 has been read to me. I request that the following
12 changes be entered upon the record for the reasons
13 indicated.
14 I have signed my name to the Errata Sheet and the
15 appropriate Certificate and authorize you to attach
16 both to the original transcript.
17
18
19
20 _____
      Jeff Follmer
21 Subscribed and sworn to before me this
22 _____day of _____, 2019.
23
24 _____
      Notary Public
25 My commission expires:_____.

Page 57

1    I have read the foregoing transcript from page 1

2  through page 59 and note the following corrections:

3  PAGE-LINE    REQUESTED CHANGE         REASON FOR CHANGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Jeff Follmer _____        Date _____

Page 58

1  State of Ohio,          )
                           ) SS:  CERTIFICATE
2  County of Cuyahoga.     )

3        I, Constance Versagi, Court Reporter and

4  Notary Public in and for the State of Ohio, duly

5  commissioned and qualified, do hereby certify that

6  the within named witness, Jeff Follmer,

7  was by me first duly sworn to testify the truth, the

8  whole truth, and nothing but the truth in the cause

9  aforesaid; that the testimony then given by him was

10  by me reduced to stenotypy/computer in the presence

11  of said witness, afterward transcribed, and that the

12  foregoing is a true and correct transcript of the

13  testimony so given by him as aforesaid.

14        I do further certify that this deposition was

15  taken at the time and place in the foregoing caption

16  specified, and was completed without adjournment.

17        I do further certify that I am not a relative,

18  counsel, or attorney of either party, or otherwise

19  Interested in the event of this action.

20        IN WITNESS WHEREOF, I have hereunto set my

21  hand and affixed my seal of office at Cleveland,

22  Ohio, on this 18th day of January, 2019.

23                        _____

24                        Constance Versagi, Court Reporter and
                          Notary Public in and for the State of Ohio.
25                        My Commission expires January 14, 2023.

**Aaron Petitt, et al. v.**
**City of Cleveland**

**Jeff Follmer**
**January 17, 2019**

## A

**Aaron (16)**
10:21;12:20,24;13:4,
16,21;14:2,22;16:23;
17:2,15,24;28:25;
37:20,22;39:7
**abeyance (1)**
21:17
**ability (1)**
35:22
**able (3)**
36:1,8;44:21
**academy (1)**
5:9
**accurate (7)**
6:2;16:1;17:14;
24:19;25:1;35:6;44:5
**accusation (2)**
39:24;40:13
**act (1)**
50:12
**actions (1)**
37:19
**acts (1)**
37:2
**actually (6)**
19:9;25:21;30:22;
34:18;45:13;52:25
**administering (2)**
31:23;32:5
**administrative (3)**
14:16;41:6,10
**administratively (1)**
26:2
**advance (2)**
32:22,25
**advise (1)**
55:19
**Affairs (3)**
35:9;41:2,7
**affect (1)**
37:11
**affected (2)**
37:13,21
**affecting (1)**
13:9
**afternoon (1)**
4:7
**again (10)**
6:4;13:1,11;14:19;
15:1;19:16,24;22:6;
54:5,21
**against (4)**
7:3,13,25;40:3
**age (2)**
4:2;49:23
**ago (2)**
5:11;46:25
**agree (3)**
13:19;26:23;46:1
**agreed (1)**

21:16
**Agreement (18)**
6:15;15:6,22;16:2,8,
11;21:1;25:8;26:21;
31:4,6,25;32:18,23;
33:15;36:3,11;44:23
**ahead (22)**
8:20;12:9;14:14;
22:3,12,24;25:16;
29:19;30:9;33:16,22;
36:6;37:14;40:22;
41:25;42:16;45:10,24;
49:10;50:17;52:24;
54:2
**aid (1)**
33:11
**allegation (1)**
19:18
**allege (1)**
11:24
**alleged (1)**
38:17
**along (2)**
10:13;17:13
**always (2)**
8:12;28:16
**Amendment (25)**
11:5,13,14,23;12:8,
17,21;13:3,5,13,16,21,
24;14:20;18:4,4;19:19;
22:6,20;29:11,13,20;
34:22;42:13,15
**American (5)**
30:4;41:23;52:20;
55:5,11
**Americans (1)**
42:6
**answered (1)**
42:21
**apparently (1)**
53:18
**appears (1)**
16:5
**approved (2)**
44:8,12
**April (3)**
15:11,14;30:5
**Arab (9)**
30:4,24;41:23;42:6;
49:13;52:10,20;55:5,
11
**Arabic (2)**
29:25;53:2
**arbitration (11)**
16:13;20:21,24;21:4,
15,17;23:11,14,22;
24:4;25:14
**arbitrations (1)**
4:12
**arbitrator (19)**
23:20;24:1,2,3,4,9,
12,16,18,21;25:5,13,
19;26:14,15;30:23;

36:17,18,21
**arise (1)**
15:1
**arrest (1)**
30:3
**Article (10)**
16:6,16,17;20:16;
44:19;45:6,12,13,18,21
**aside (5)**
29:11,13,20;50:14;
52:19
**aspect (1)**
28:25
**assert (1)**
12:20
**assigned (4)**
24:1,3,3;26:15
**assignment (1)**
31:13
**Association (3)**
5:14;6:1;15:24
**assume (1)**
52:19
**assuming (1)**
40:25
**attempt (1)**
12:19
**attempting (1)**
30:3
**attorney (2)**
28:20,22
**attorneys (4)**
27:13,15,24;29:3
**authority (1)**
26:18
**Avery (4)**
27:14,23;29:2,8
**award (3)**
24:22;25:5,13
**aware (1)**
35:3
**away (1)**
40:16

## B

**back (11)**
5:23;13:12;14:1;
21:12;22:2;24:23;
26:18;31:1,2;42:20;
51:23
**bad (1)**
40:16
**Badge (1)**
4:25
**Bargaining (23)**
6:15;12:22;15:6,22;
16:2,8,11;20:25;25:8;
26:21;31:4,6,24;32:18,
23;33:14;35:15,16;
36:3,10;37:21;44:22,
23
**based (3)**

22:10;33:14,15
**basis (8)**
19:17;21:25;22:7;
32:14;37:13;44:17;
45:4,18
**beat (1)**
50:16
**Beck (1)**
5:24
**beginning (3)**
31:2;50:21,25
**behalf (9)**
10:20;11:16;13:16;
17:16;30:7;32:4;37:9,
10;44:21
**belief (1)**
44:17
**bell (1)**
39:23
**bench (1)**
23:15
**benefits (4)**
25:6;26:20,24;27:3
**best (2)**
4:16;37:15
**better (1)**
44:4
**Bill (1)**
27:15
**bit (2)**
29:23;52:9
**Bob (1)**
5:23
**both (9)**
23:16,18;32:19,20;
33:17;38:23;44:22;
46:16;54:22
**bother (3)**
49:6;55:3,9
**bothering (1)**
54:21
**bottom (4)**
9:10;53:10;55:1,2
**break (1)**
43:20
**brief (1)**
31:1
**briefs (1)**
23:22
**bring (3)**
13:15;28:17;44:21
**bringing (1)**
37:8
**broke (3)**
40:7,19,23
**brought (1)**
40:2
**Bylaws (1)**
44:6

## C

**call (3)**

22:10;47:13,20
**called (1)**
9:17
**Calvin (2)**
9:1;19:6
**came (3)**
38:2,23;48:13
**camera (1)**
50:10
**Can (21)**
4:23;10:5,12;15:21;
16:6;17:5;18:12;19:24;
24:4,7,9,12,18;39:13;
40:11;41:11;42:17;
46:4,4;49:19,23
**Captain (1)**
9:11
**car (1)**
54:7
**care (1)**
32:9
**cars (1)**
54:8
**case (11)**
10:23;12:19;23:20,
25;32:15;34:20;36:1;
41:22;42:14;43:16,18
**categorize (1)**
13:8
**cause (4)**
16:18;24:7,10,13
**cell (2)**
22:16,17
**certain (1)**
8:14
**certified (1)**
4:3
**chain (1)**
8:24
**challenged (1)**
25:25
**challenges (1)**
17:20,23
**challenging (1)**
20:7
**changes (1)**
44:11
**characterize (5)**
8:18;13:6;30:4;31:3;
32:3
**characterized (1)**
10:16
**charge (4)**
18:16,17;29:16;46:9
**charges (6)**
38:14;40:2;41:3,8;
48:13;52:13
**charter (8)**
32:11,15;33:1,13;
35:12;44:19,24;45:20
**Chief (7)**
8:25;9:3,4,10,10,11;
19:5

**Chiefs (1)**
9:6
**choose (1)**
8:15
**circle (1)**
13:12
**Circling (1)**
31:1
**circumstances (1)**
30:1
**City (36)**
5:1,7,24;6:16;11:25;
12:1;13:14,25;14:13;
15:5,23;16:3,23;17:2,
17;20:2;21:16;22:1,17;
23:8;24:7,10,13;25:21,
22;26:22;31:25;32:23;
34:5;35:5;36:3;37:3;
40:2;43:7;44:24;53:15
**Civil (1)**
5:4
**civilian (1)**
41:19
**civilians (1)**
41:21
**claim (10)**
11:2,3,6;18:4,5;
22:21;34:12,12,13,13
**claiming (17)**
12:17;13:2,4,12,23;
14:11,19,20;15:6,15,21,
22;22:22;25:12;33:23;
34:6,14,18
**claims (6)**
11:1,12,14;13:16;
14:8;33:19
**class (1)**
5:9
**clause (1)**
16:7
**clear (2)**
13:1;27:12
**Cleveland (21)**
5:2,14,24,25;11:25;
13:14,25;14:13;15:23,
24;16:3;17:17;20:2;
22:2;23:8;31:25;32:24;
35:5;36:4;37:3;53:15
**close (2)**
19:16;40:11
**club (1)**
53:15
**Collective (19)**
6:15;15:6,22;16:2,8,
11;20:25;25:7;26:21;
31:3,5,24;32:18,22;
33:14;35:16;36:2,10;
44:23
**combination (1)**
24:15
**coming (1)**
50:3
**Commander (2)**

9:11,16
**Commissioner (1)**
9:17
**communication (1)**
27:8
**communications (1)**
28:21
**community (5)**
52:10,20;53:2;55:5,
11
**Complaint (9)**
10:9,12,14;11:7,19;
21:24;33:4;37:9,19
**complete (1)**
26:18
**concerned (1)**
47:23
**concluded (1)**
55:21
**condone (1)**
51:12
**conduct (1)**
37:3
**conference (1)**
23:16
**Connie (2)**
38:5;39:13
**Constitution (4)**
11:13,15;36:23;44:6
**Constitutional (3)**
12:12;13:21;35:17
**contained (7)**
21:22;22:11;36:10;
44:19;45:6,20;52:21
**contending (1)**
11:20
**contesting (2)**
19:22;20:1
**contract (2)**
31:24;32:5
**contractual (1)**
12:13
**conversation (9)**
12:5;28:7,11;34:2;
38:20,22;39:5;52:17,
18
**conversations (8)**
26:3;27:19,20;28:9,
24;29:5;39:2,7
**copy (5)**
10:9;16:1;17:6,14;
44:5
**corrected (1)**
54:3
**corrective (1)**
47:19
**correctly (4)**
11:17;12:16;41:20;
53:22
**counsel (2)**
27:10;29:8
**Count (10)**
10:16,16,17,18,19;

11:4,5,10;32:10;33:3
**counts (4)**
10:14,19,23;11:1
**Couple (1)**
4:11
**court (3)**
4:15;23:16;26:1
**CPPA (74)**
5:21;6:7,11,16,18,22,
25;7:3,8,11,15,19,23;
8:1,8,8,15,15;9:25;
10:19,23;11:16,24;
12:16;13:6,9,13;14:2,
6;15:1,5;16:3,7,25;
17:15;19:18,21,25;
20:13;21:16,20;23:8;
25:12;26:16,22;27:2;
28:2,3;30:7;31:7,13,14,
21;32:1,4,14,24;33:10,
20;35:12,21;37:9,11,
13,21;41:18;44:6,17,
21,24;45:4,19;48:2,5
**CPPA's (17)**
12:7;10;13:2,24;
14:12,20;21:21;22:7,
22;24:5;27:23;29:2,7;
32:25;33:23;37:4;
44:24
**crime (1)**
31:21
**crimes (2)**
31:16,18
**criminal (10)**
23:2;25:22,23,24;
26:6;41:5,7,12,13,14
**CROSS-EXAMINATION (1)**
4:5
**culture (2)**
30:24;49:13
**curious (1)**
37:1
**current (8)**
5:17;8:1,5,7;15:14;
16:2;25:15;45:6
**currently (8)**
5:1,13;8:25;9:6;
16:25;20:24;21:4,16
**cycle (1)**
31:7

**D**

**damages (4)**
25:12,18;37:6,7
**date (1)**
48:21
**dated (1)**
15:14
**dates (1)**
17:6
**David (1)**
8:4
**day (13)**

11:4,5,10;32:10;33:3
**days (1)**
26:23
**December (4)**
5:18;6:8;7:5,16
**decision (1)**
25:14
**deem (1)**
25:6
**defend (3)**
35:22,25;36:8
**Defendant (4)**
13:14,25;14:13;37:3
**Defendant's (39)**
10:4;11:20;15:17,20;
16:12;17:8,11;18:11;
19:2,7,14;20:7,9,15;
21:2,14;23:10;25:9;
26:17;27:1;29:17;
30:19;32:12;33:3;
36:12;44:1;45:2,8,23;
46:3,11,13,18;48:16;
51:23;52:1,22;53:5,10
**Delguyd (1)**
28:19
**departments (1)**
31:19
**deposition (6)**
4:9;10:7,10,25;
18:11;55:21
**deprived (1)**
35:21
**Deputy (3)**
9:4,6,10
**designate (2)**
8:16;31:12
**designated (7)**
6:17,25;7:11,18;8:7,
15;31:13
**designation (1)**
7:22
**detail (1)**
20:12
**detective (2)**
5:1;31:17
**difference (1)**
34:11
**different (2)**
39:8;48:8
**disagree (3)**
18:8;36:14,16
**disciplinary (6)**
14:17,18;23:17;28:1,
5,8
**discipline (21)**
14:16;16:17;17:16;
21:24,25;22:5,10;23:1;
24:11,14;28:13,16;
35:1;37:5,20;38:10,12;
47:13,15;48:4,11
**disciplined (13)**

17:1,17,20;19:10;
24:23;25:2;26:19;27:4,
6;36:20;39:6,8;49:23
**Discussion (1)**
21:10
**disparaging (4)**
30:21;38:18;43:7,11
**disposition (2)**
19:5;20:8
**dispute (1)**
26:14
**districts (1)**
31:19
**Division (10)**
5:2;7:22;8:18,25;
9:21;28:4;43:8,12;
47:9,14
**document (5)**
23:9;44:11;45:7,21;
48:15
**done (4)**
25:21,22;38:17;
44:14
**down (8)**
5:25;9:3,9;13:18;
30:22;50:13;53:14,18
**due (17)**
11:2,3,12;14:9,10,12,
21,23;16:23;21:21;
22:7,9,21,22;33:19;
34:12,21
**duly (1)**
4:2
**during (5)**
6:22;18:10;31:3;
44:15,15
**duty (6)**
6:6;46:16,20,22;
50:10;54:16

**E**

**earlier (1)**
48:5
**eastern (2)**
53:19;55:2
**educate (1)**
35:22
**educated (3)**
29:23;49:12;53:8
**education (2)**
33:12;52:9
**effect (1)**
44:7
**either (6)**
27:23;29:1;33:23;
43:11;44:8;51:5
**else (6)**
13:17;26:12;35:18;
41:8;42:11;49:21
**enabled (1)**
41:1
**end (2)**

50:21,25
**enough (2)**
 30:23,24
**entire (3)**
 17:23;20:8;22:7
**entirety (1)**
 26:19
**entitled (1)**
 25:7
**equal (5)**
 33:20,23,25;34:11,
 13
**equate (1)**
 9:15
**Equipment (1)**
 42:3
**equivalent (1)**
 9:16
**Eric (1)**
 8:10
**essentially (2)**
 18:3;31:14
**even (1)**
 4:20
**everybody's (1)**
 12:14
**evidence (1)**
 23:18
**Exactly (1)**
 49:4
**examined (1)**
 4:3
**exchange (4)**
 46:6,17;53:11;54:25
**Exhibit (40)**
 10:5;11:21;15:17,21;
 16:12;17:8,12;18:11,
 20;19:7,14;20:7,10,15;
 21:2,15;23:11;25:10;
 26:17;27:2;29:18;
 30:20;32:13;33:4;
 36:13;44:2;45:2,9,23;
 46:4,11,13,18;48:17;
 51:23;52:1,23;53:5,10;
 54:18
**Exhibits (1)**
 19:2
**exists (1)**
 33:10
**exonerate (1)**
 24:16
**exonerates (1)**
 24:21
**explain (2)**
 11:9;34:10
**explanation (1)**
 23:23

**F**

**F-A (2)**
 39:15,16
**Fair (5)**

8:18;13:23;23:23;
 35:23;42:24
**fall (1)**
 33:17
**familiar (3)**
 17:24;30:1;39:22
**far (5)**
 5:23;14:5;47:22,24;
 49:12
**F-A-R-D-A-R-K-O (1)**
 39:14
**far-fetched (1)**
 49:22
**F-E (1)**
 39:15
**F-E-D-O-R-K-A (1)**
 39:18
**Fedorko (4)**
 37:25;39:12;42:14,
 22
**feel (1)**
 25:18
**few (1)**
 46:25
**fight (1)**
 14:24
**fighting (5)**
 31:16,20;39:25;40:7,
 8
**figure (1)**
 34:17
**file (1)**
 20:19
**filed (2)**
 17:15;37:18
**files (1)**
 20:13
**find (5)**
 24:18;52:4,5;53:2;
 55:5
**finding (2)**
 19:22;20:1
**first (36)**
 4:2;6:6,10,11,13,22;
 7:7,7,18;8:5;11:5,14,
 23;12:7,17,20;13:2,5,
 13,15,24;18:2,3,4;
 19:16,19;22:6;29:11,
 13,20;34:22;38:2;40:5;
 42:13,15;52:11
**Flats (1)**
 53:15
**Flint (2)**
 8:10;31:19
**F-L-I-N-T (1)**
 8:10
**flip (1)**
 15:25
**FOLLMER (2)**
 4:1,25
**F-O-L-L-M-E-R (1)**
 4:25
**follow (1)**

50:12
**follows (1)**
 4:4
**food (1)**
 8:24
**foot (1)**
 40:20
**force (2)**
 43:14,16
**forget (1)**
 8:12
**forth (1)**
 14:1
**forward (2)**
 28:12;37:17
**found (4)**
 17:25;19:12;40:3;
 41:16
**four (3)**
 9:6;31:10;48:23
**Fraternal (1)**
 9:22
**freedom (1)**
 11:5
**frequently (1)**
 4:20
**Friedman (1)**
 29:2
**front (2)**
 18:6,25
**full (4)**
 4:24;7:21;8:8;28:3
**full-time (3)**
 6:17,25;7:10
**further (1)**
 55:19
**future (1)**
 13:8

**G**

**gap (1)**
 40:11
**general (5)**
 11:9;33:12;47:14;
 50:14,15
**generally (2)**
 15:8,11
**gets (1)**
 8:15
**Given (1)**
 54:25
**giving (1)**
 53:19
**goes (3)**
 9:10;20:20;33:5
**Gonzalez (1)**
 7:19
**Good (1)**
 4:7
**Gorman (21)**
 12:3;26:10,13;38:11,
 22;39:2,5;46:7,16,19,

22;53:12;54:1,3,6,7,8,
 20,22;55:1,15
**G-O-R-M-A-N (1)**
 26:13
**Gorman's (2)**
 38:24;48:4
**Gotcha (1)**
 41:15
**GPO (3)**
 47:18,22,24
**grab (1)**
 17:5
**great (1)**
 20:12
**grievance (18)**
 16:12,25;17:15;
 20:13,14,16,19,20;
 21:13,22;23:6,7;24:6;
 25:14;26:16;27:1;36:2,
 9
**grieve (1)**
 47:25;48:4,6
**group (1)**
 39:3
**guess (4)**
 31:4;40:24;52:5,7
**guilt (2)**
 19:23;20:2
**guilty (5)**
 17:25;19:12;24:18;
 29:15;30:18
**guy (1)**
 40:16

**H**

**haha (3)**
 49:6;55:3,10
**haji (11)**
 29:22;30:21,25;49:6,
 12;52:6,6,8;53:8;55:3,
 10
**hall (5)**
 6:18,25;7:19,23;
 31:13
**hand (4)**
 15:19;17:10;18:9;
 43:25
**happens (1)**
 13:7
**hard (1)**
 53:19
**head (2)**
 4:19;35:19
**hearing (11)**
 14:17,18;23:18,22;
 24:4;28:1,5,8;35:24;
 36:18;48:11
**hearings (1)**
 28:18
**hedonic (1)**
 37:6
**held (1)**

48:12
**Hello (1)**
 4:8
**hereinafter (1)**
 4:3
**hierarchy (1)**
 9:9
**hitting (1)**
 40:17
**Hold (2)**
 17:7;24:13
**honestly (2)**
 22:15;23:25
**host (1)**
 37:6
**hour (1)**
 49:4
**hundreds (1)**
 4:12
**hurt (3)**
 39:25;40:14,15
**Hustler (3)**
 53:14,14,18

**I**

**idea (2)**
 29:22;52:13
**identification (25)**
 10:4;11:20;15:18,20;
 17:9,11;18:10;19:1;
 20:6,9;21:1,14;23:10;
 25:9;26:16;29:17;
 30:19;36:12;44:1;45:3,
 8,22;46:3,10;48:16
**identify (3)**
 15:21;44:3;46:5
**impose (2)**
 24:10;49:21
**imposed (3)**
 16:18;17:2;19:9
**imposing (1)**
 24:13
**improper (3)**
 49:9;51:1,6
**incident (4)**
 38:21;41:4;48:22;
 54:14
**incidents (1)**
 37:12
**incorrect (1)**
 42:19
**indicates (1)**
 16:17
**individual (1)**
 43:6
**individuals (1)**
 43:12
**injured (1)**
 40:6
**in-offensive (3)**
 49:8;50:22;51:5
**instructions (1)**

4:21
**intended (1)**
50:6
**interaction (1)**
30:3
**interesting (1)**
43:16
**Internal (3)**
35:9;41:2,7
**into (7)**
11:11;12:3;14:16,17;
20:15;23:1;26:2
**investigating (1)**
31:18
**investigation (8)**
23:2;25:23,23,24;
26:5,6;37:16;38:11
**investigations (1)**
35:10
**involve (2)**
26:6,9
**involving (2)**
42:9,14
**issue (7)**
20:4;25:15;26:20;
29:11,14;36:16;42:14
**issued (3)**
21:25;22:1,17
**issues (5)**
12:13;29:21;36:19,
22;42:2
**issuing (1)**
22:9

**J**

**January (4)**
5:18;6:7;7:4,15
**Jared (1)**
27:23;29:2,8
**JEFF (8)**
4:1,7,25;18:21,25;
21:12;43:25;53:9
**job (2)**
12:12;27:25
**Joe (1)**
28:19
**John (2)**
37:25;38:4
**jump (1)**
35:20
**June (1)**
44:8

**K**

**kicked (1)**
40:19
**kicking (1)**
40:14
**Kinas (1)**
7:9
**K-I-N-A-S (1)**

7:9
**kind (4)**
15:1;35:8;38:12;
47:10
**KLEBANOW (38)**
8:20;12:9;14:14;
17:4;18:15,19,22;21:7;
22:3,12,24;25:16;
27:12,18,22;29:9,19;
30:9;33:16,22;36:6;
37:14;39:17,21;41:25;
42:16;43:20;45:10,16,
24;48:18;49:10,19;
50:8;17;52:24;54:2;
55:20
**knew (1)**
50:12
**knows (1)**
50:9
**K-R-A- (1)**
38:6
**Kraynik (6)**
37:25;38:4,12,23;
39:6;46:24
**Kraynik's (1)**
47:25

**L**

**labor (2)**
31:23;32:5
**language (2)**
41:24;42:2
**largely (1)**
31:23
**last (7)**
4:24;20:21;21:12;
23:7,11;37:1;42:20
**later (2)**
15:12;54:21
**laugh (1)**
55:15
**law (1)**
41:13
**lawful (1)**
4:2
**laws (2)**
12:13;35:16
**lawsuit (15)**
19:21,25;20:4;21:5,
18;25:15;27:11,21;
29:1,6;32:21;37:13;
44:18,21;45:6
**lawyers (1)**
27:22
**leader (1)**
52:9
**least (5)**
10:15;40:18;47:18,
22;48:21
**led (1)**
41:3
**legal (4)**

27:10;29:8;34:11;
35:16
**letter (11)**
18:16,18;19:5,9;
20:8;29:16;38:13,16;
46:10;47:1,25
**letters (1)**
47:15
**level (3)**
9:16;20:24;21:15
**Lieutenant (1)**
9:11
**life (1)**
15:8
**line (1)**
31:5
**list (2)**
35:23,23
**little (4)**
28:10;29:23;49:22;
52:9
**Lodge (1)**
9:23
**LOL (1)**
55:15
**long (1)**
4:22;5:7,11
**look (10)**
10:5,12;18:12;27:1;
32:10,11;44:2;46:4;
50:18;53:9
**looking (9)**
10:3;14:4,5;18:15;
33:8;34:4;41:7;46:2;
48:15
**Loomis (2)**
6:3,4
**Loomis' (3)**
6:6,22;44:15
**loop (1)**
19:17
**loss (2)**
37:5,5
**lot (2)**
28:16;32:6
**loud (1)**
55:16

**M**

**makes (1)**
23:20
**male (2)**
29:25;30:5
**management (1)**
16:16
**March (4)**
5:8,12;15:12,15
**marked (24)**
10:3;11:20;15:17;
17:8;18:9,13;19:1;
20:6,8;21:1,13;23:9;
25:8;26:16;29:16;

30:18;36:11;43:25;
45:2,7,22;46:2,10;
48:15
**marking (2)**
15:19;17:10
**matters (3)**
8:8,9;35:13
**may (9)**
13:17;17:2,18;22:2;
24:22;25:6;26:20;44:7,
8
**Maybe (4)**
17:12;40:13,15;
42:21
**mean (9)**
33:3,20;35:11,14;
49:21;50:2,15;54:6,7
**meaning (2)**
17:24;50:15
**means (7)**
34:14;37:17;49:16,
18;52:6;53:14;54:1
**meant (2)**
29:22;54:13
**media (3)**
51:3,7,10
**Medina (6)**
8:4;28:6,15,19;29:5;
31:18
**M-E-D-I-N-A (1)**
8:4
**member (4)**
12:22;13:6;14:5;
15:3
**members (13)**
13:7,9,11,22;14:25;
33:13;35:13;37:4,9,11,
13,22;44:22
**members' (1)**
12:14
**mentioned (1)**
43:1
**Menzalora (13)**
4:6;17:5;18:17,20,
24;21:9,11;27:17;
43:22,24;51:20,22;
55:18
**message (22)**
23:4;34:9;39:5,7;
41:22;46:6,17;48:19;
49:5,14;50:20,25;51:4,
12;52:11,15,22;53:4,
11;54:17,25;55:9
**messages (10)**
22:10;36:16;38:25;
40:1,10;41:15,18;42:5,
8,23;43:1,10,11;48:18,
19;51:25
**messaging (4)**
12:4,6;34:3;35:1
**middle (2)**
53:19;55:1
**midnight (1)**

49:4
**might (2)**
28:18;39:17
**Mike (1)**
17:5
**military (1)**
8:22
**Mine (1)**
18:13
**minute (2)**
10:5;43:21
**minutes (2)**
46:25;54:21
**months (1)**
31:10
**more (5)**
36:7;19;43:19;52:25;
55:7
**Most (3)**
9:20,20;33:8
**mostly (1)**
28:10
**much (1)**
43:19
**must (1)**
48:20
**mutual (1)**
33:11

**N**

**name (4)**
4:24,24;39:22;51:16
**nationality (1)**
42:9
**nature (4)**
42:23,25;47:12,22
**necessarily (1)**
31:5
**negative (1)**
30:25
**neither (1)**
10:25
**next (1)**
37:1
**non-disciplinary (6)**
47:1,5,8,12,16,21
**none (1)**
27:25
**normal (1)**
29:7
**notice (1)**
35:24
**notwithstanding (1)**
4:21
**number (1)**
24:5

**O**

**object (1)**
40:16
**Objection (23)**

**Aaron Petitt, et al. v.**
**City of Cleveland**

**Jeff Follmer**
**January 17, 2019**

8:20;12:9;14:14;
22:3,12,24;25:16;
29:19;30:9;33:16,22;
36:6;37:14;41:25;
42:16;45:10,24;49:10,
19;50:8,17;52:24;54:2
**objectives (1)**
32:25
**obligated (1)**
35:15
**observed (1)**
41:1
**obviously (2)**
4:16;43:14
**Off (5)**
21:9,10;31:10;35:19;
51:20
**offended (1)**
51:24
**offensive (21)**
29:25;30:8,10;41:23;
42:2,5,8,23,25;43:5;
49:8;50:21;51:5;52:4,
5,7,23;53:3,6;55:6,10
**offer (1)**
30:16
**offering (2)**
50:19,24
**Officer (55)**
5:5;7:10,21;8:7;
9:12;10:1,7,21,24;
12:20;13:9,11;18:10;
19:18;21:20;22:1,8;
23:3;25:1,6,13;26:6,
18;27:4,8,20;28:6;
29:5,6,14;30:7,17;
33:13,25;34:9,19;35:4,
25;36:4,9;37:10,20;
41:19;42:14,21;46:7,
24;47:25;50:4,10;
51:13,25;53:5;54:12,
16
**officers (12)**
6:17,24;8:14;9:21;
28:3;31:7,12,21;34:24;
41:20;49:23;54:23
**officers' (1)**
15:4
**once (7)**
13:1,11;14:19;19:16;
20:13;24:3;54:5
**one (22)**
7:10;11:2,3;14:24;
15:11,14;18:2;19:17;
28:2,2;30:13;31:1;
36:7,24;37:2;38:1,2;
39:6;50:18;51:15;55:7,
13
**only (3)**
10:19;20:3;40:25
**opinion (10)**
23:21;29:14;30:13,
17;49:7,11;50:19,24;

51:4;53:7
**opposed (1)**
4:18
**Order (2)**
9:22;47:15
**organization (2)**
8:19,22
**original (1)**
26:4
**originally (1)**
41:14
**out (5)**
31:16,18;34:17;53:2;
55:15
**outlet (2)**
51:3,7
**outside (13)**
12:2;23:3;25:18,24;
26:4;27:9,9,21;28:21;
29:1,6;34:5;36:25
**over (3)**
28:10,11;41:9
**Overnight (2)**
48:24;49:2
**own (2)**
12:17;13:24

**P**

**packing (2)**
54:11,13
**page (3)**
10:13;11:19;32:12
**paragraph (9)**
32:12;33:5,5,8,10,
18;35:11,20;37:1
**paragraphs (1)**
33:8
**paramilitary (1)**
8:19
**part (2)**
14:2;40:5
**parties (2)**
15:5;23:21
**partner (2)**
54:1,6
**party (5)**
12:19;32:15;44:18;
45:5,19
**Patrol (10)**
5:4;6:16,24;9:12;
10:1,20;12:20;46:7;
54:8,22
**Patrolmen's (3)**
5:14;6:1;15:24
**pay (3)**
24:23;27:3,5
**pending (3)**
17:1;21:4,17
**people (6)**
4:20;28:17;40:2;
47:19;52:17;53:19
**person (3)**

14:25;39:10,11
**personal (3)**
12:3;22:16,18
**pertains (2)**
10:19;49:13
**Petitt (54)**
10:21;12:24;13:10,
11,16,22;14:2;15:2;
17:2,24;21:21;22:1;
24:17,18,21,23;25:2,7,
13;26:7,18;27:9,21;
28:14,15,25;29:6,15;
30:18;34:7,9,15,19;
35:4,25;36:4,9;37:10,
20,22;38:20,23;39:8;
46:6,16,20;51:13,14,
25;53:6,12;54:12,16,22
**Petitt's (19)**
10:7,25;12:3,20;
13:4;14:22;16:23;
17:15;18:4,11;19:18;
22:8;23:3;27:4;28:5;
30:8;33:25;48:19;49:5
**phone (11)**
22:11,16,17;23:2,4;
38:24;40:1,4,10;41:3,
16
**picked (1)**
34:2
**PIKE (1)**
18:13
**plaintiff (14)**
10:20;11:16;12:19;
13:15;28:25;32:15;
35:11,21;37:4;39:7;
44:18;45:5,19;46:6
**platoon (1)**
48:23
**platoons (1)**
49:1
**play (1)**
20:15
**please (1)**
18:21
**Plus (1)**
52:16
**pm (1)**
55:21
**point (1)**
40:18
**Police (26)**
5:2,14;6:1;7:22;8:18,
25;9:1,3,4,7,21,22,23;
15:24;19:5;28:4;33:13;
34:24;43:8,12;47:9,14;
49:23;50:3,10;54:14
**Police's (1)**
47:14
**Policies (2)**
43:9,13
**policy (1)**
35:13
**position (2)**

12:1;14:15
**post (1)**
23:22
**predisciplinary (1)**
48:11
**prepping (1)**
28:7
**presence (4)**
27:9,10;29:1,7
**present (5)**
6:2;27:15;28:18,22;
44:13
**presidency (1)**
44:15
**President (16)**
5:13,17,21,25;6:6,10,
11,23;7:3,7,8,15,18;
8:2,5,11
**presidents (1)**
6:3
**prevailed (1)**
7:14
**previously (3)**
10:4;19:1;46:2
**private (6)**
12:5;23:4,4;26:2;
52:17,17
**probably (2)**
4:13;53:1
**procedural (13)**
11:2,10,11;14:8,9,12,
20,21,23;16:23;21:21;
22:7,8
**procedure (4)**
20:14,16;21:23;23:7
**procedures (2)**
43:9,13
**process (24)**
11:2,3,12;14:9,10,12,
21,23;16:13,24;21:21;
22:8,9,21,23;23:1,6,23;
29:24;33:19;34:12,21;
36:2,9
**promoted (2)**
9:20,21
**proper (4)**
44:18;45:19;49:8;
51:5
**protect (7)**
12:14;15:3,4;34:24;
35:22,25;36:8
**protected (1)**
12:13
**protection (6)**
33:11,21,24,25;
34:12,13
**providing (1)**
33:11
**provision (1)**
16:16
**public (1)**
35:8
**purpose (2)**

15:20;35:12
**purposes (29)**
16:9;17:11;18:10;
19:2,21,25;20:6,9,25;
21:1,14;22:6;23:10;
25:9;26:17,25;29:17;
30:19;32:22;33:10;
36:12;44:1;45:8,22;
46:3,11;48:16,24;49:2
**put (6)**
5:9;21:17;23:17,18;
29:20;52:19
**puts (1)**
7:4
**Putting (3)**
29:11,13;50:14

**Q**

**quick (2)**
10:5;17:6

**R**

**race (1)**
42:9
**ran (3)**
7:3,13,25
**rank (3)**
5:4;9:3,25
**reach (1)**
21:15
**read (4)**
11:11,16;53:22;
55:20
**reading (1)**
50:3
**real (1)**
17:6
**Really (4)**
27:25;34:20;52:6,8
**recall (6)**
28:8;42:18;47:7;
51:9,11;54:4
**receive (1)**
38:12
**received (3)**
17:17;38:10;47:4
**Recess (2)**
43:23;51:21
**recognition (1)**
16:7
**record (13)**
4:23;11:11;13:1;
20:13;21:9,10;25:1;
35:8;44:3;46:5;48:24;
49:2;51:20
**reference (1)**
32:10
**referenced (4)**
19:13;20:14;23:9;
46:18
**referring (3)**

34:3;51:14;52:8
**reflected (2)**
19:6;54:17
**regarding (9)**
17:1,16;22:19,20;
27:10,21;28:25;29:6;
42:6
**re-instruction (5)**
38:13,16;47:1,15;
48:1
**relating (1)**
41:4
**relationship (2)**
40:9;45:20
**relative (1)**
35:23
**release (4)**
6:17,25;7:11;28:4
**remarks (2)**
38:18;43:7
**remedial (1)**
47:19
**remember (4)**
38:14;41:20;44:25;
51:18
**remind (1)**
4:19
**rephrase (1)**
28:22
**reporter (2)**
4:15;23:16
**represent (1)**
35:13
**represented (1)**
9:22
**representing (2)**
27:13,15
**represents (2)**
9:25;16:8
**reputation (1)**
37:5
**request (1)**
35:8
**resolution (2)**
21:5,18
**responding (1)**
54:14
**responds (2)**
54:20,20
**response (2)**
54:7;55:15
**responsibilities (3)**
32:4,6,9
**responsibility (1)**
13:20
**rest (2)**
9:9;49:14
**result (1)**
37:2
**resulted (5)**
8:1;19:4;37:19;46:7,
9
**retired (2)**

5:24;48:10
**retraining (1)**
47:11
**return (1)**
27:3
**right (6)**
14:24;29:22;32:10;
35:2;45:5;52:10
**rights (25)**
12:8,14,15,18,22;
13:3,5,13,21,24;14:12,
21,23;15:4,4;16:16,24;
19:19;21:22;22:9,23;
33:24,25;35:17;55:19
**ring (1)**
39:23
**road (1)**
13:18
**role (1)**
13:15
**room (1)**
23:16
**route (1)**
53:20
**rule (2)**
26:15;36:21
**run (1)**
31:6

**S**

**same (7)**
15:2;22:20,25;31:6;
34:8;38:18,18
**saw (1)**
52:11
**saying (4)**
6:2;26:24;51:11;
52:20
**scene (1)**
54:13
**scope (5)**
12:2;23:3;26:4;34:5;
36:25
**Sean (9)**
12:3;26:10,11;38:10,
22,23;46:7;48:4,7
**S-E-A-N (2)**
26:11,13
**search (11)**
12:2;25:25;38:24;
40:1,24,25;41:2,5,6,10,
14
**second (9)**
5:21;6:12,13,14;
7:14;8:11;15:25;38:3;
39:11
**sending (3)**
34:8;47:18,18
**sense (1)**
11:9
**sensitivity (2)**
47:5,10

sent (4)
47:5,9;51:12,25
**separate (4)**
12:18;38:21;39:2,4
**Sergeant (1)**
9:12
**series (1)**
29:12
**served (2)**
24:24;25:2
**Service (1)**
5:4
**shaking (1)**
4:18
**S-H-A-W-N (1)**
26:11
**shelf (1)**
15:8
**shift (2)**
48:21;49:3
**short (1)**
55:15
**sides (2)**
23:17,18
**Signature (1)**
55:22
**similar (4)**
23:15,17;34:8,9
**similarly (5)**
13:17;34:7,15,18;
35:4
**single (1)**
54:7
**sit (1)**
23:15
**sitting (5)**
22:15;30:13,16;
37:18;51:17
**situated (5)**
13:17;34:7,15,19;
35:4
**six (11)**
17:1,17,20;19:9;
24:23;25:2;26:19,23;
27:4,6;36:20
**Skipping (1)**
33:18
**somebody (15)**
9:17;34:14,18;39:25;
40:15;49:21;50:13;
51:11,24;52:3,5,19;
53:1;55:4,10
**somebody's (1)**
26:2
**Somehow (1)**
40:13
**sometimes (1)**
23:21
**somewhere (1)**
40:25
**soon (1)**
54:11
**sorry (2)**

23:5;54:21
**speak (1)**
33:9
**Spec (1)**
18:7
**specifically (1)**
51:16
**specification (14)**
18:2;19:16,23,23;
20:3,3,4;24:8,11,14;
29:15;30:18;38:19;
46:9
**specifications (13)**
17:25;18:6;19:4,13;
24:9,12,16,17,19,22;
28:12;42:3;43:3
**speech (1)**
11:6
**speed (2)**
10:13;17:12
**spell (1)**
4:24;38:4;39:13
**stand (1)**
54:3
**start (1)**
41:9
**starts (1)**
33:4
**stated (1)**
51:3
**statement (5)**
24:19;33:14,15;35:6;
42:24
**States (4)**
11:14,15;16:7;36:22
**stating (4)**
26:1;55:4,7,8
**stay (1)**
21:4
**step (3)**
20:21;23:7,11
**S-T-E-P-H-E-N (1)**
39:19
**stepped (1)**
5:25
**steps (1)**
20:20
**Steve (12)**
6:6,22,24;7:9,13,14,
25;37:25;39:12,13,19;
40:3
**S-T-E-V-E (2)**
39:19,20
**Steven (2)**
6:3,4
**Steve's (1)**
7:14
**still (2)**
24:2;47:13
**Stop (2)**
53:14,18
**strip (1)**
53:14

**stuff (1)**
43:13
**subject (1)**
18:3
**submit (1)**
23:21
**substantive (5)**
11:3,12;14:8;22:21,
22
**suffer (1)**
37:4
**support (1)**
23:19
**sure (11)**
12:12;26:23;28:19,
20;36:24;38:1;46:19;
48:14;51:9,14;55:12
**suspect (4)**
22:19;40:8,14,19
**suspension (11)**
17:1,18,20,23;19:10;
24:23;25:3;26:19;27:4,
6;36:20
**sworn (1)**
4:2

**T**

**talk (3)**
14:7,9;53:1
**talked (4)**
33:19;34:21,22;
44:20
**talking (3)**
46:24;48:5;54:5
**talks (1)**
32:11
**targeted (1)**
25:22
**Technically (1)**
47:13
**telling (2)**
18:7;36:21
**tenure (3)**
5:21;6:22;7:14
**term (8)**
5:17;6:12,13,13,14;
8:1;30:2,8
**testified (2)**
4:3,12
**testimony (1)**
44:25
**texting (1)**
41:1
**texts (2)**
14:15;26:3
**third (1)**
48:20
**though (4)**
18:14;22:4;38:15;
47:7
**thought (2)**
44:20;52:14

Aaron Petitt, et al. v.
City of Cleveland

Jeff Follmer
January 17, 2019

**three (19)**
6:16,20,20,21;10:14,
15;11:1;15:8,12;17:25;
19:4,12;24:17,18,22;
31:7,10,12;44:15
**throwing (1)**
40:16
**tickets (1)**
31:17
**times (1)**
4:11
**timing (1)**
38:1
**today (6)**
4:22;10:10;30:13,16;
37:18;51:17
**toe (7)**
40:7,14,15,17,19,24;
43:15
**top (5)**
8:24;35:19;53:9,10;
54:25
**touch (1)**
36:18
**touching (1)**
36:19
**tour (1)**
6:6
**toward (1)**
43:5
**towards (1)**
28:12
**Traffic (2)**
9:17;31:17
**trail (1)**
20:19
**training (7)**
47:6,10,11,19,20,21;
48:1
**Treasurer (2)**
8:12,13
**trial (1)**
23:15
**true (3)**
16:1;17:14;44:5
**Truthfully (2)**
29:24;36:24
**try (1)**
10:13
**trying (4)**
16:21;32:21,25;
34:17
**tune (10)**
49:6,15,16,23;50:1,7,
11,15;55:3,9
**turn (1)**
16:6
**two (5)**
6:24;14:8;28:3;
34:21;52:16
**type (2)**
41:22;43:13
**types (2)**

53:19;55:2

**U**

**uh-uh (1)**
4:18
**um-hum (2)**
4:17,18
**unable (1)**
25:25
**under (9)**
6:15;11:12,14;25:7;
26:20;35:12;44:22;
47:14,18
**union (3)**
9:25;14:24;15:3
**Union's (1)**
12:1
**unit (3)**
35:15;37:21;44:22
**United (3)**
11:14,15;36:22
**units (1)**
31:20
**unit's (1)**
12:22
**unless (3)**
44:14;48:7;51:15
**up (19)**
6:20;11:1;31:5;34:2;
48:14;49:6,15,16,24;
50:1,7,11,15,16;52:13;
54:11,13;55:3,9
**uphold (1)**
35:16
**upon (2)**
17:2;22:10
**use (5)**
30:8;43:14,16;50:7,
14
**used (2)**
12:4;30:2
**usual (2)**
27:24;29:3
**usually (1)**
34:13

**V**

**validity (2)**
19:22;20:1
**various (1)**
20:20
**V-E-N (1)**
39:21
**Vice (6)**
6:10,11;7:7,18;8:5,
11
**video (2)**
49:24;50:10
**violate (1)**
12:7
**violated (18)**

11:24;12:18,23;13:3,
5,14,25;14:6,13,21,23;
16:23;19:19;21:23;
22:9,23;33:24;34:1
**violation (2)**
11:6;34:22
**violations (4)**
11:23;12:21;34:21;
36:22
**violence (4)**
49:18,21;50:6,13
**violent (1)**
50:5

**W**

**wages (1)**
37:5
**waiting (1)**
24:2
**waived (1)**
55:22
**warning (1)**
35:24
**warrant (11)**
12:2;25:25;38:24;
40:1,24;41:1,2,5,6,10,
14
**watch (1)**
13:20
**way (5)**
15:2;30:14;44:4;
50:18;55:13
**weren't (1)**
10:24
**whenever (1)**
44:12
**wherefore (1)**
33:12
**whole (3)**
35:23;37:6;50:20
**whomever (1)**
8:15
**who's (1)**
52:19
**William (1)**
7:19
**Williams (2)**
9:1;19:6
**within (2)**
8:14;21:22
**witnesses (1)**
23:19
**wondering (1)**
45:16
**word (9)**
30:21,25;49:12,15;
50:1,7,11,15;53:8
**words (1)**
12:4
**work (2)**
28:4;31:14
**working (2)**

48:20;54:4
**works (1)**
48:23
**worrying (1)**
13:7
**writing (1)**
31:16
**written (1)**
23:20
**wrong (2)**
27:16;38:17

**Y**

**year (2)**
15:11;31:7
**years (4)**
5:8;15:9,12;44:16
**Y-N-I-K (1)**
38:7

**0**

**09 (2)**
6:7,23

**1**

**1 (24)**
5:18;6:7;7:4,15;
10:16,19,23;11:1,4;
15:14;16:6;18:7;20:4;
24:8,12,14;29:15;
30:18;38:19;44:19;
45:7,12,17;46:9
**1:32 (1)**
53:24
**1:58 (6)**
48:20;49:5;51:13;
52:1,22;53:5
**10 (2)**
17:18;22:2
**100 (1)**
33:5
**103 (1)**
33:10
**106 (1)**
5:10
**107 (2)**
32:12;33:18
**108 (1)**
35:11
**11 (1)**
6:23
**126 (1)**
35:20
**128 (1)**
33:5
**14th (4)**
11:13;14:20;22:20;
42:15
**15 (2)**
42:3;43:2

**16 (1)**
11:19
**17 (1)**
32:12
**18 (2)**
17:4;44:8
**1992 (1)**
5:10
**1st (1)**
15:11

**2**

**2 (15)**
10:16,19,23;11:1,5;
19:23;20:3,21;24:9,11,
15;45:14,15,18,21
**2:37 (1)**
55:21
**20 (1)**
54:21
**2011 (1)**
6:8
**2012 (1)**
7:4
**2014 (5)**
7:5;44:7,8,9,12
**2015 (1)**
7:15
**2016 (1)**
15:14
**2017 (3)**
7:16;17:3;30:5
**2018 (3)**
5:18;17:18;22:2
**2019 (1)**
15:15
**2020 (1)**
5:18
**21 (2)**
44:7,8
**22 (1)**
20:16
**24-18 (1)**
26:16
**27 (2)**
5:8;30:5

**3**

**3 (13)**
10:17,18,19;11:10;
17:2;19:23;20:3,21;
24:9,12,14;32:11;33:3
**31 (5)**
5:18;6:8;7:5,16;
15:15
**31st (1)**
15:12

**4**

**4 (2)**

| | | | | |
|---|---|---|---|---|
| 16:17;20:21 | | | | |
| **6** | | | | |
| **654 (1)**<br>4:25 | | | | |
| **8** | | | | |
| **8 (1)**<br>9:23 | | | | |
| **9** | | | | |
| **92 (1)**<br>5:12 | | | | |